**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED

2012 JUN -1 PM 2: 15

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
            DEPUTY

SOUTHWEST PHARMACY SOLUTIONS, INC. d/b/a
AMERICAN PHARMACIES,
                                    Plaintiff

-vs-                                                    Case No.  A-12-CA-142-SS

THOMAS SUEHS, EXECUTIVE COMMISSIONER
OF THE TEXAS HEALTH AND HUMAN SERVICES
COMMISSION,
                                    Defendant
_____

## O R D E R

Before the Court are Defendant Suehs' Motion to Dismiss the Amended Complaint, filed

April 23, 2012 [#18]; Plaintiff's Response in Opposition to Defendant Sueh's Motion to Dismiss

Amended Complaint, filed May 7, 2012 [#24]; and Defendant Sueh's Reply on Motion to Dismiss

Amended Complaint, filed May 18, 2012 [#26].  Having considered the motion, response and reply

thereto, the case file as a whole and the applicable law, the Court enters the following opinion and

orders.

### I. Background

Plaintiffs Southwest Pharmacy Solutions, Inc. d/b/a American Pharmacies ("American

Pharmacies") filed this action naming as sole defendant Thomas Suehs ("Suehs"), Executive

Commissioner of the Texas Health and Human Services Commission ("HHSC").[1]  Plaintiff, an

association of independent pharmacies, asserts claims on behalf of itself as a provider of Medicaid

services in Texas, as well as on behalf of Medicaid beneficiaries in Texas.  (Plf. Am. Compl. ¶¶ 1,

9-15).

The Supreme Court recently summarized the relevant background thusly:

_____

[1] As referenced below, another pending case in this Court, *Pharmacy Buying Ass'n, et al v. Suehs*, Cause
Number A-12-CV-156-SS, was filed three days after this case was filed, asserting substantially similar claims against
Suehs (the "Parallel Litigation")..

> Medicaid is a cooperative federal-state program that provides medical care to needy individuals. To qualify for federal funds, States must submit to a federal agency (CMS, a division of the Department of Health and Human Services) a state Medicaid plan that details the nature and scope of the State's Medicaid program. It must also submit any amendments to the plan that it may make from time to time. And it must receive the agency's approval of the plan and any amendments. Before granting approval, the agency reviews the State's plan and amendments to determine whether they comply with the statutory and regulatory requirements governing the Medicaid program.  And the agency's director has specified that the agency will not provide federal funds for any state plan amendment until the agency approves the amendment.

*Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, __ U.S. __, 132 S. Ct. 1204, 1208 (2012) (internal citations omitted).  As in *Douglas*, the relevant statutory provision here provides a State's Medicaid plan and amendments must:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area..

42 U.S.C. § 1396a(a)(30)(A) ("Section 30(A)").

Specifically at issue in this action is the Medicaid plan and amendments for Texas ("State Plan").  According to Plaintiff, prior to March 1, 2012, Texas's Medicaid outpatient drug benefit was primarily provided through HHSC's Vendor Drug Program and in accordance with the reimbursement methodology set forth in the State Plan and adopted in the Texas Administrative Code.  (Plf. Am. Compl. ¶¶ 32-34).  As of March 1, 2012, HHSC instituted new regulations that require virtually all Medicaid beneficiaries in Texas to enroll in the STAR Medicaid managed care program and to obtain their prescriptions within that program.  (*Id.* ¶ 35).

Unlike in a traditional fee-for-service model, under a managed care program, the managed care organizations ("MCOs") enter into comprehensive risk contracts with a state.  *See* 42 U.S.C. § 1396b(m) (defining MCOs); 42 C.F.R. § 428.1(a) (rules regarding MCOs and contracts with a

state).  Under a risk contract, the MCO is paid a "capitation payment,"[2] and in return assumes risk for the costs of the services covered under the contract and incurs loss when the cost of furnishing the services exceeds the payments under the contract.  42 C.F.R. § 438.2 (defining risk contract). The "capitation payment" is required by law to be "actuarially sound." 42 U.S.C. § 1396b(m)(2)(A)(A)(xiii)(II) (capitation rates paid to MCO subject to regulations requiring actuarially sound rates); 42 C.F.R. § 438.6(c)(2)(i) ("All payments under risk contracts and all risk-sharing mechanisms in contracts must be actuarially sound").  However, both CMS and HHSC have disavowed any obligation to regulate payment rates between MCOs or their subcontracted Pharmacy Benefit Managers ("PBMs") and network providers.  See 67 Fed. Reg. 40998, 41019 (June 14, 2002) ("Except in the case of payments to [Federall Qualified Health Centers] . . .  we do not regulate the payment rates between MCOs and subcontracting providers" and, as to subcontracts between MCOs and their subcontracting providers, "CMS does not review these subcontracts."); 36 Tex. Reg. 8667 (Dec. 23, 2011) (federal regulations "have been interpreted to generally prohibit the state from mandating payment of specific provider rates by managed care organizations").

Both Plaintiff and Defendant agree, a state may switch to a managed care model for their Medicaid plan by submitting a plan amendment and obtaining CMS approval.  They also agree Suehs and HHSC, on behalf of Texas, did not submit such an amendment. (Plf. Am. Compl.¶¶ 44-45; Def. Mot. to Dism. at 7, 10-11).  Defendant contends an amendment was not required, because a waiver may be, and was, obtained from CMS for a "Section 1115" demonstration project.  See 42 U.S.C. § 1315(a)(1) (authorizing waiver of state plan requirements for experimental, pilot or demonstration projects).  Plaintiff, in turn, maintains no such overarching waiver was obtained.

---

[2] "Capitation payment" is defined under federal regulations as "a payment the State agency makes periodically to a contractor on behalf of each recipient enrolled under a contract for the provision of medical services under the State plan." 42 C.F.R. § 438.2.  See also MERRIAM-WEBSTER DICTIONARY (online ed.) (defining capitation as "a uniform per capita payment or fee").

Rather, according to Plaintiff, Defendant obtained only four specific, limited waivers from CMS, none of which authorized a deviation in pharmacy reimbursement rates from that established in HHSC's Vendor Drug Program and the State Plan. (Plf. Am. Compl.¶¶ 40-45).

Plaintiff alleges, as of March 1, 2012, Texas pharmacies dispensing prescription medication to Medicaid beneficiaries have been denied the reimbursement rates established in the Vendor Drug Plan. Plaintiff further alleges the rates currently paid are significantly lower than the rates established in the Vendor Drug Plan, and in some cases are below the costs of acquiring the medication dispensed. According to Plaintiff, as a result of these lower reimbursement rates, its pharmacy member have lost significant sums of money, several have gone out of business, and the remainder are forced to choose between reducing Medicaid services, laying off personnel, or otherwise reducing costs. (*Id* ¶¶ 46-54).

Plaintiff asserts a single cause of action under the Supremacy Clause, attacking the acts of Suehs in altering the reimbursement rates for pharmacies acting as Medicaid providers in Texas. Succinctly put, Plaintiff raises two claims. First, Plaintiff complains Suehs' failure to compensate pharmacies under the approved State Plan is improper as the State Plan is the only duly adopted Medicaid plan in Texas (the "State Plan Claim"). Second, Plaintiff complains, even if the managed-care compensation scheme is a duly adopted Medicaid plan, it violates Section 30(A) as the scheme does not ensure equal access to service or quality of care (the "Section 30(A) Claim"). (*Id*. ¶¶ 55-59). As relief, Plaintiffs seek declaratory and injunctive relief, compelling Suehs to compensate all pharmacies dispensing outpatient drugs to Medicaid beneficiaries and enrolled in the Vendor Drug Program based on the methodology set forth in the State Plan and prohibiting Suehs from compensating such pharmacies using any other methodology. (*Id*. ¶ 60).

Defendant has now filed a motion to dismiss. Suehs contends Plaintiff's complaint should be dismissed because: (1) Plaintiff lacks standing to assert the claims raised in this action; and (2)

4

Plaintiff has failed to state a claim upon which relied may be granted under the Supremacy Clause. The parties have filed responsive pleadings and the matters are now ripe for determination.

## II. Standard of Review

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S. Ct. 2396, 2403 (1978). A federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States. U.S. CONST. art. III §§ 1-2; *Kokkonen*, 511 U.S. at 377, 114 S. Ct. at 1675. The party seeking relief bears the burden of establishing subject matter jurisdiction. *United States v. Hays*, 515 U.S. 737, 743, 115 S. Ct. 2431, 2435 (1995); *Peoples Nat'l Bank v. Office of Comptroller of Currency of United States,* 362 F.3d 333, 336 (5th Cir. 2004).

A party may move for dismissal of a case for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction must be considered before any other challenge. *See Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 94-95, 118 S. Ct. 1003, 1012 (1998) ("The requirement that jurisdiction be established as a threshold matter ... is inflexible and without exception"); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (court must find jurisdiction before determining validity of claim). On a Rule 12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assocs., Inc. v. State Board of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992).

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and

plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 1965-66 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, 550 U.S. at 570, 127 S. Ct. at 1974. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 456 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). The standard is properly guided by "[t]wo working principles." *Id.* First, although "a court must accept as true all of the allegations contained in a complaint," that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 556 U.S. at 678, 129 S. Ct. at 1949-50. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 679, 129 S. Ct. at 1950. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

### III. Analysis

Defendant has sought to dismiss Plaintiff's complaint on two bases – lack of standing and failure to state a claim. As standing is a jurisdictional matter, the Court will address that issue first.

**A.      Standing**

### 1. Applicable Law

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395, 100 S. Ct. 1202, 1208 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317 (1997). This requirement, like other jurisdictional requirements, is not subject to waiver and demands strict compliance. *Raines*, 521 U.S. at 819, 117 S. Ct. at 2317; *Lewis v. Casey*, 518 U.S. 343, 349 n.1, 116 S. Ct. 2174, 2178 n.1 (1996). To meet the standing requirement a plaintiff must show (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 704 (2000); *Consol. Cos., Inc. v. Union Pacific R.R. Co.*, 499 F.3d 382, 385 (5th Cir. 2007); *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561, 112 S. Ct. at 2136.

### 2. Discussion

Plaintiff here asserts it has standing both on behalf of itself and on behalf of Medicaid beneficiaries. (Plf. Am Compl. ¶¶ 12-15). The Supreme Court has "adhered to the rule that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski v. Tesmer*, 543 U.S. 125, 129, 125 S. Ct. 564, 567 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975)). The rule

is not absolute, however. The Supreme Court has recognized a limited exception when the litigant seeking third-party standing has suffered an "injury in fact" giving him a "sufficiently concrete interest" in the outcome of the issue, the litigant has a "close" relationship with the third party on whose behalf the right is asserted and there is a "hindrance" to the third party's ability to protect his own interests. *Powers v. Ohio*, 499 U.S. 400, 411, 111 S. Ct. 1364, 1370-71 (1991). Courts generally "have not looked favorably upon third-party standing." *Kowalski*, 543 U.S. at 130, 125 S. Ct. at 568 (denying third-party standing to attorney seeking to litigate right of client); *Conn v. Gabbert*, 526 U.S. 286, 292–93, 119 S. Ct. 1292, 1296 (1999) (same); *Terrell v. I.N.S.*, 157 F.3d 806, 809 (10th Cir. 1998) (rejecting third-party standing of daughter challenging constitutionality of provisions governing citizenship of out of wedlock children as biased against fathers because no hindrance to father's participation demonstrated); *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1341 (5th Cir. 1988) (alumni, football players, and cheerleaders lacked third-party standing to assert claims of university).

Defendant claims Plaintiff cannot meet either the first or third elements of third-party standing. That is, Suehs contends Plaintiff can show neither an "injury in fact" nor a "hindrance" to Medicaid beneficiaries' ability to bring suit on their own behalf. The Court will discuss Defendant's contention concerning Plaintiff's lack of injury below in addressing Plaintiff's standing to bring a claim on its own behalf, and thus will address only the alleged "hindrance" faced by Medicaid beneficiaries.

Plaintiff maintains third-party standing is appropriate because Medicaid beneficiaries are not as well positioned and informed as pharmacy providers as to the impact of the new reimbursement rates. Plaintiff also asserts the health of certain Medicaid beneficiaries and the limited financial resources of all Medicaid beneficiaries present a significant hindrance to their ability to litigate this matter.

Defendant correctly points out these same arguments were rejected by Judge Martinez in *Equal Access for El Paso, Inc. v. Hawkins*, 428 F. Supp. 2d 585 (W.D. Tex. 2006), *rev'd on other grounds*, 509 F.3d 697 (5th Cir. 2007).   In so doing, Judge Martinez found the conclusional assertion of decreased information, as well as the bare assertion of a lack of resources, insufficient to establish third-party standing. *Id.* at 605-06.[3]

The Court agrees with Defendant that the reasoning of Judge Martinez is convincing. Plaintiff here has suggested some factors which could possibly hinder some Medicaid beneficiaries from asserting a claim.  However, something more than a hypothetical hindrance is required.  *See Miller v. Albright*, 523 U.S. 420, 448, 118 S. Ct. 1428, 1443 (1998) (noting petitioner had not shown "substantial hindrance" or "genuine obstacle" to third party's ability to assert own claim).[4]  The legal landscape of this country is littered with numerous examples of cases brought by those facing significant obstacles, including Clarence Earl Gideon and numerous other incarcerated individuals. Significantly, in *Equal Access*, Judge Martinez also noted the fact that the claims were in part brought by Medicaid beneficiaries undermined the force of the claim of hindrance. *Id.* at 605-06. *See also Douglas*, __ U.S. __, 132 S. Ct. at 1207 (Supremacy Clause action brought by Medicaid providers and recipients).[5]  Accordingly, Plaintiff has not established a sufficient basis for third-party standing to assert claims on behalf of Medicaid beneficiaries.

---

[3] Plaintiff argues Judge Martinez's favorable citation to *Clayworth v. Bonta*, 295 F. Supp. 2d 1110, 1118 (E.D. Cal. 2003), *rev'd on other grounds*, 140 F. App'x 677 (9th Cir. 2005), a case which found Medicaid providers had third-party standing to sue on behalf of beneficiaries, is of greater moment than his actual holding.  The Court disagrees for two reasons.  First, the value of a favorable reference, as opposed to the actual decision in a case, is questionable. Second, the court in *Clayworth* described the situation therein as a total lack of information on the part of the beneficiaries about the effect of Pharmacy reimbursement rates. Plaintiff here has simply alleged it is in a better position than beneficiaries in Texas.

[4] Defendant also suggests the ability of Medicaid beneficiaries to raise claims asserting insufficient access to pharmacy benefits in an administrative process weighs against any claim of hindrance.  Absent from Defendant's argument, however, is any citation to legal authority suggesting access to administrative remedies is relevant to determining whether one's ability to litigate a matter is hindered.

[5] As Defendant also notes, the substantially similar claims asserted against Suehs in the Parallel Litigation were filed by both Medicaid providers and beneficiaries as plaintiffs.

Plaintiff also asserts standing to bring claims on its own behalf.[6]  Defendant, however, contends standing is absent because Plaintiff has shown no injury and its claim is not yet ripe. According to Defendant, Plaintiff "describes only speculative injuries" because Plaintiff's allegations are simply assertions that the Texas pharmacy business will suffer significant adverse economic impact under a managed care model.  Defendant further suggests in its reply that Plaintiff has failed to allege how defects in the adoption by HHSC of a managed care model has resulted in injury to Plaintiff.

Defendant's characterization of Plaintiff's injury misses the salient point of Plaintiff's complaint.  That is, there is no dispute that Plaintiff, by way of its members, is being reimbursed for dispensing prescription medication at a rate lower than that in the Vendor Drug Plan.  Moreover, it is clear this is the conduct Plaintiff challenges in the State Plan Claim, wherein Plaintiff asserts HHSC has not properly amended the State Plan.[7]  As Plaintiff points out, this sort of economic injury has been recognized as a sufficient basis for standing to challenge laws regulating payments for medical care.  *See Singleton v. Wulff*, 428 U.S. 106, 112-13, 96 S. Ct. 2868, 2873 (1976) (physicians performing abortions for which payment under Medicaid was refused suffered concrete injury); *Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 699 (5th Cir. 2011) (hospice care provider "undisputedly established standing by demonstrating that it has suffered an actual and concrete financial injury" due to the use of challenged regulation governing payment calculation);

---

[6] Technically, Plaintiff, as an association, is asserting claims of behalf of its members. "There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy," but "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511, 95 S. Ct. 2197, 2211 (1975).  Associational standing is found when the association's members have standing to sue in their own right, the interests at issue are germane to the association's purpose; and the participation of individual members in the lawsuit is not required. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550-51 (5th Cir. 2010) (citing *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (1977)).  Defendant does not argue Plaintiff lacks associational standing in this action.

[7] In so concluding the Court is, of course, in no way opining as to whether Plaintiff's State Plan Claim states a cognizable cause of action under the Supremacy Clause.  That issue is addressed below.

*Westside Mothers v. Haveman*, 289 F.3d 852, 864 (6th Cir. 2002) (physicians professional organizations challenging Medicaid provision established injury based on not receiving compensation for medical services members were providing).

Similarly, as to the Section 30(A) Claim, Plaintiff asserts the reduced reimbursements themselves will inevitably lead to a violation of Section 30(A). It is abundantly clear Plaintiff is being injured by reduced rates. Defendant's insistence that Plaintiff is required to show at this early stage that reduced reimbursement will necessarily cause its members to go out of business is misplaced. *Cf. Friends of the Earth*, 528 U.S. at 181, 120 S. Ct. at 704 (standing to raise claim under Clean Water Act does not require showing of injury to environment but injury to the plaintiff, to insist on former rather than latter as part of standing "is to raise the standing hurdle higher than the necessary showing for success on the merits").[8]

Defendant further suggests Plaintiff cannot complain of reduced payments because providers are not entitled to participate in Medicaid, and may "vote with their feet" by declining to provide services to Medicaid recipients. Although Defendant has couched its argument as Plaintiff's failure to show an "injury in fact," this argument seems rather to suggest Plaintiff cannot establish the reduced reimbursements are caused by the conduct of HHSC.

The Court finds Defendant's position unconvincing. Recast, Defendant's argument is tantamount to suggesting a pedestrian who was struck by a car running a red light was not "injured in fact" by the car striking her in the intersection, because she had the choice to decline to be a pedestrian. The decision of Plaintiff's member pharmacies to sell prescription medications is not the cause of its injury. Rather, it is the decision of HHSC to reimburse those pharmacies at rates

---

[8] This does not, however, mean this issue is not relevant to whether Plaintiff has stated a cognizable claim under the Supremacy Clause.

lower than the Vendor Drug Plan.[9]  Accordingly, the Court concludes Defendant has failed to show dismissal on the basis of lack of standing is warranted.[10]

## B.      Failure to State a Claim

As an initial matter, the Court reiterates the concerns raised in the orders denying Plaintiff's motions for a temporary restraining order in this action and in the Parallel Litigation concerning the Supreme Court's recent decision in *Douglas*.  In *Douglas*, the Supreme Court seriously questioned "whether Medicaid providers and recipients may maintain a cause of action under the Supremacy Clause to enforce a federal Medicaid law," but ultimately declined to make a definitive ruling on the issue, instead remanding the case back to the Ninth Circuit for further proceedings in light of CMS's intervening approval of the challenged State statutes.  *Douglas*, __ U.S. __, 132 S. Ct. at 1207, 1211.[11]  The Court again declines to dismiss this action based on *Douglas*, and in light of current Fifth Circuit precedent.  *See Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 334 (5th Cir. 2005) (rule recognizing implied right of action under Supremacy Clause to enjoin state or local regulation that is preempted by federal statutory or constitutional provision "is well-established").  Rather, the matter is ripe for addressing at the appellate court level.

Defendant has moved to dismiss Plaintiff's complaint for failure to state a claim under Rule 12(b)(6).  Defendant maintains Plaintiff has not alleged sufficient facts to support a claim under the Supremacy Clause.

---

[9] The Court also suggests Defendant's argument is a rather simplistic and outdated view of the economic reality of the medical services industry.  Providers of medical services and products would be hard pressed to stay in business were they to limit their customers to those who paid in cash, rather than rely on reimbursements from third party benefit providers.

[10] The Court finds telling, although clearly not dispositive, the Supreme Court's failure to mention any issue regarding standing in *Douglas*, as the Supreme Court has made clear "[w]e are obliged to examine standing *sua sponte* where standing has erroneously been assumed below."  *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110, 122 S .Ct. 511, 514 (2001).

[11] The dissenting justices in *Douglas* found no such cause of action exists.  *Douglas*, __ U.S. __, 132 S. Ct. at 1215 (Roberts, J., dissenting).

The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land  . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2.  Thus, the clause "mandates that federal law overrides, i.e., preempts, any state regulation where there is an actual conflict between the two sets of legislation." *Equal Access for El Paso, Inc. v. Hawkins*, 562 F.3d 724, 730 (5th Cir. 2009).  Conflict preemption occurs when "compliance with both federal and state regulations is a physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Sanchez*, 403 F.3d at 336 (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204, 103 S. Ct. 1713, 1722 (1983) (internal quotation marks omitted)).

Defendant first argues Plaintiff's State Plan claim fails to state a cognizable Supremacy Claus claim.  Both parties spend significant time in their pleadings discussing the ways in which a state may, or may not, amend or alter its Medicaid plan. Defendant argues HHSC fully complied with the applicable federal laws and regulations by obtaining a waiver to implement a managed care plan as a "Section 1115" demonstration project. Plaintiff, in turn, contends the waiver obtained does not specifically exempt the application of the properly approved Vendor Drug Plan.

The Court need not determine the validity of Plaintiff's attack on the propriety of HHSC's attempt to adopt a managed care plan.  Defendant correctly points out this portion of Plaintiff's allegations at most show a failure to comply with federal law by failing to properly amend the State Plan, but do not establish a conflict between state and federal law, as is required to state a claim under the Supremacy Clause.  By way of the State Plan Claim, Plaintiff may have alleged a violation of procedural due process, or may have alleged HHSC is failing to comply with its own laws and regulations by failing to abide by the Vendor Drug Plan, but those allegations fail to state a claim under the Supremacy Clause.

13

In response, Plaintiff asserts that when federal law mandates that a state act, and it fails to do so, the omission violates the Supremacy Clause.  However, the language of the opinion in *Sanchez*, the very authority on which Plaintiff relies, falls short of establishing that proposition.  As quoted above, *Sanchez* makes clear preemption requires a party show "compliance with both federal and state regulations is a physical impossibility" or that state law "stands as an obstacle" to compliance with federal mandates.  *Sanchez*, 403 F.3d at 336.  In claiming the waiver HHSC obtained did not include a waiver of the Vendor Drug Plan, Plaintiff is asserting HHSC is neither complying with neither state nor federal law.  Accordingly, Plaintiff's State Plan claim fails to allege a violation of the Supremacy Clause and must be dismissed.

Defendant also argues Plaintiff's Section 30(A) claim should be dismissed. As noted above, this claim is based on Plaintiff's assertion that the managed care plan adopted by HHSC does not "provide such methods and procedures relating to . . . the payment for, care and services . . . to assure that payments are consistent with efficiency, economy and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan." (Plf. Am. Compl. ¶ 29) (quoting Section 30(A)).  Plaintiff has alleged HHSC is violating Section 30(A) because the prescription reimbursements paid to its member pharmacies after March 1, 2012 are below the cost to acquire at least some drugs.  As a result, Plaintiff alleges its member pharmacies "have been forced to choose between providing Medicaid services, laying off personnel or otherwise reducing costs."  (*Id.* ¶ 53).

As Defendant points out, absent from Plaintiff's complaint is any allegation that even a single Medicaid beneficiary has been unable to obtain a prescription drug.  As such, Plaintiff has

alleged only a theoretical possibility of an impact on care and services sufficient to rise to the level of a violation of Section 30(A).[12]

Moreover, Plaintiff has not, and indeed cannot, point to a state law or regulation which necessarily violates Section 30(A). As both parties have pointed out, both HHSC and CMS have disavowed any responsibility for setting reimbursement rates to pharmacy providers under a managed care model. Rather, those decisions are left to the MCOs and PBMs. Thus, the insufficient reimbursements Plaintiff complains of are not mandated by the managed care model currently used by HHSC, but rather the product of choices by the MCOs and PBMs, as well as the choice of Plaintiff's member pharmacies to continue to dispense prescription medications to Medicaid beneficiaries. Those choices are not mandated by a state law, and thus cannot be said to be a violation of the Supremacy Clause. *See Equal Access*, 562 F.3d at 730 (claim that HHSC's refusal to provide adequate reimbursement rates for Medicaid services was in direct conflict with the "Reasonable Promptness Provision of the Medicaid Act" failed to state Supremacy Clause violation because plaintiff failed to identify any state law or regulation which conflicted with federal law). Effectively, Plaintiff's complaint is an attack on the whole notion of a managed care model under Medicaid, and reflects its member pharmacies' belief that the inadequacies in such a model will inevitably fail to ensure an adequate reimbursement rate for providers of medical services. Such a question is not, however, one which can be raised under the Supremacy Clause. *See Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 785 n.6 (5th Cir. 2012) (question whether one federal law takes precedence over another does not implicate Supremacy Clause).[13]

---

[12] The Court is not suggesting an attack such as Plaintiff's must wait until the viability of its member pharmacies is irreparably impaired and substantial numbers of Medicaid beneficiaries are unable to obtain prescription medication. Rather, the Court is opining that Plaintiff's showing in this case falls short of stateing a viable claim under Section 30(A).

[13] The Court is not unsympathetic to the concerns of Plaintiff as to whether a managed care model will result in sufficient economies over the traditional fee-for-service model to satisfy the mandates of Section 30(A). But that is a matter which will undoubtedly be debated and addressed in the political sphere in the years to come.

The Court, therefore, concludes Defendant is entitled to dismissal of Plaintiff's complaint for failure to state a claim upon which relief can be granted.

In accordance with the foregoing:

IT IS ORDERED that Defendant Sueh's Motion to Dismiss the Amended Complaint [#18] is GRANTED.

SIGNED this the _____ day of June 2012.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE